CULPEPPER, Judge
(concurring in part and dissenting in part).
I agree that the employer lulled the employee into thinking his medical expenses would be paid until his fractured leg healed. However, I think the employee was also “lulled” as to his wages.
Plaintiff is a poorly educated farm laborer, who never had a prior workmens’ compensation claim and did not know the laws of prescription. His testimony shows why he waited so long to see a lawyer:
“Q. Is there any particular reason that you did not seek legal counsel or legal advice before you did?
A. Yes, sir.
Q. Tell us why you didn’t.
A. Well, he had told me that he was going to pay for medical and expenses, he was going to take care of me and see to it that I get hack in shape to where I could go hack to work on my regular every day job. I mean by that, by continuing to water and everything else, as close as I could understand it.
Q. Did he tell you from time to time that he was going to take care of your various expenses that may be incurred and that sort of thing?
A. Yes, sir.
Q. How about the time when it became necessary to have the bone grafting procedure. Did you discuss with him at that time the necessity for another operation and the expense that would be involved there ?
A. Yes, sir. Not exactly the expenses, but I discussed the operation.
Q. What did he tell you or remark to you concerning the operation?
A. Well, that he couldn’t pay for the operation at that time.
Q. Was this the first time that he had ever indicated to you that he was not going to take care of the necessary medical treatment and care?
A. Yes, sir.
Q. Now was this the thing that caused you, then to realize that you would need legal counsel ?
A. Yes, sir.
Q. And was it at this time that you then sought out my services in connection with this accident?
A. Pretty close to it, sir.”
Defendant does not deny that he led plaintiff to believe he would “take care” of him. He testified as follows:
“Q. Now during the time — from the time of injury, until the spring of 1969, when it became apparent that he was going to have further surgery, did you tell Wilson that you were going to take care of his bills ? Not to worry about it, that you were going to take care of all of them?
A. Well, now, what bills are you talking about?
Q. The doctor bills and things that he was incurring?
A. I don’t remember whether I did or not.
Q. Did you in fact, until the surgical, the second surgical procedure came necessary, did you up until that time tell him that you would take care of the bills and that you would see that the doctor would be taken care of, that sort of thing. But *751 then when this further surgical procedure was necessary, you told him that you couldn’t take care of it?
A. I might have, sir. I don’t remember.”
The majority opinion states the assurances given to plaintiff as to wages related only to those paid from the time of the accident until plaintiff returned to work. Apparently, the basis of this conclusion is a portion of plaintiff’s above quoted testimony, that he was told he would be taken care of until he could “go back to work on my regular every day job.” Actually, plaintiff never did return to his “regular every day job.” His leg was in a brace and he was still under the doctor’s care from a serious unhealed fracture. He could drive a tractor, but he could not walk the levees or do any work which required being on his feet for long periods. It is true he testified he earned his wages, and perhaps he did. But he was not able to do all of his regular work as a farm laborer, and he was led to believe he would be furnished a job and medical expenses until he could.
Defendant did not carry workmen’s compensation insurance. He knew he was faced with a very serious claim. The doctor kept him informed that plaintiff’s fracture was not healed and a bone graft might be necessary. With full knowledge of plaintiff’s continued disability, defendant undoubtedly wanted to prevent him from filing suit before the prescriptive period elapsed. This was the obvious purpose of his apparent generosity in paying wages for almpst two years and agreeing to pay the doctor’s bill, which he actually never did pay. And defendant accomplished his purpose. He lulled plaintiff into not consulting an attorney.
To allow the employer to raise the prescriptive bar here would promote an obvious injustice. Under a liberal application of the workmen’s compensation statute, I think the circumstances are sufficient to show that the employer lulled the employee into a false sense of security, causing him to withhold suit until after the prescriptive period had expired. See the recent case of Dupaquier v. City of New Orleans, 260 La. 728, 257 So.2d 385 (1972) and the authorities cited therein.
I respectfully concur in the remand of this case for an award of medical expenses, but dissent from the affirmance of the exception of prescription as to compensation.